UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:07-CV-152-TBR

IN RE:

LWD, INC., *et. al.*,                                              CHAPTER 11
                                                                   CASE NO. 03-51021
                                                                   (Jointly Administered)

                                                                   DEBTORS

OFFICIAL UNSECURED CREDITOR'S COMMITTEE              APPELLANT

v.

K&B CAPITAL, LLC, ROBERT KATTULA                    APPELLEES
AND MARIA KATTULA


## MEMORANDUM OPINION

This matter is before the Court on appeal from the United States Bankruptcy Court for

the Western District of Kentucky.  Official Unsecured Creditor's Committee ("Committee")

appeals the Bankruptcy Court's Order denying Plaintiff's Motion for Entry of an Order for

Contempt (Docket #5).  The Appellees, K&B Capital, LLC ("K&B"), Robert Kattula, and Maria

Kattula ("Kattulas"), filed a Brief in response (Docket #6).  The Committee filed a Reply Brief

(Docket #7).  The matter is now ripe for adjudication.  The Court now **REVERSES** the

Bankruptcy Court's Order.

## BACKGROUND

This case arises from the bankruptcies of several related companies: LWD, Inc.; LWD

Field Services, Inc.; LWD Land Company, Inc.; LWD Equipment, Inc.; LWD Trucking, Inc.;

1

LWD Sanitary Landfill, Inc. (collectively the "LWD Defendants"); and General Environmental Services, LLC ("GES").   Prior to the bankruptcy filings, most of LWD Inc.'s assets were seized by Bank One, a creditor.  K&B then purchased Bank One and began loaning large amounts of money to the LWD Inc. entities to avoid bankruptcy.  Robert Kattula and Maria Kattula are principals of K&B.  Because of these loans, the collateral K&B purchased from Bank One diminished in value by the time the bankruptcy proceedings began.  The Bankruptcy Court entered an Order (the "Cash Collateral Order") allowing "adequate protection payments" to Debtors of up to $35,000 a week.  The Order was to remain in effect until the Bankruptcy Court modified it during the ensuing bankruptcy proceedings.

The LWD Inc. Defendants originally were involved in Chapter 7 bankruptcies, but consented to convert the proceedings to Chapter 11 bankruptcies.  These proceedings were ordered to be jointly administrated with the Chapter 11 bankruptcy proceedings for GES on September 11, 2003.  Under the lead case number for LWD, Inc., a Creditor's Committee was appointed for the joint administration of the bankruptcies.[1]

On January 27, 2004, the Bankruptcy Court ordered the Debtors to sell substantially all their assets pursuant to 11 U.S.C. §363.  This Order (the "Final Sale Order") authorized the sale of property "free and clear of all liens, tax lies, claims, and encumbrances."[2]  A Term Sheet was

---

[1]K&B contests that the Committee represents all Defendants because it was solely filed under the lead case number for LWD, Inc.  However, as the Court previously held in a related appeal, it is permissible to appoint a joint committee in this case, the Bankruptcy Court clearly intended the joint appointment of a committee, and it was impossible under the filing system to notice for the appointment of separate committees under the other case numbers.  *See In re LWD*, *Inc.*, 2007 WL 1035149 (W.D. Ky. 2007).

[2]K&B argues that the Bankruptcy Court authorized the sale of the Debtors' Chapter 5 claims to the highest bidder.  When these claims were asserted against K&B by the Committee, K&B

2

drawn up to dictate the terms of the auction on February 23, 2004.  Under the Term Sheet, a bidder's "allowed secured claim and credit bid were fixed and limited (except that the bidder could be reimbursed up to $75,000.00 for certain new advances through the auction sale) to the amounts provided thereunder."  The Term Sheet was detailed and purported to govern the entirety of issues surrounding the auction and required disclosure of all asset transfers of the Debtors before the sale.  On March 9, 2004, K&B successfully bid $2,555,000 for the assets of the Debtors, which included the $1.75 million credit bid allowed under the Term Sheet.  The second-highest offer at the sale was a bid by Purchase Area Disposal Services, LLC, for $2.4 million, and the Bankruptcy Court ordered that it could purchase the Debtors' assets if K&B could not successfully complete the transaction.  The Bankruptcy Court subsequently approved the sale.  On March 24, 2004, the Bankruptcy Court ordered K&B to submit an accounting of funds paid to it by any debtor entity from January 1, 2004, through March 31, 2004.

On June 16, 2004, the Committee filed a Motion claiming that K&B secreted over $476,500 in cash assets of the Debtors prior to the sale which were not disclosed at the auction and that the transfer violated §549 of the Bankruptcy Code.  These cash assets were the moneys paid as collateral under the Cash Collateral Order.  The Committee also alleged that the Debtors failed to disclose an existing insurance policy, the Closure Insurance Policy, worth hundreds of thousands of dollars in prepaid premiums.  The Committee contended that the disclosure of the

---

argued that the Committee no longer had the right to assert Chapter 5 claims.  As the Court held in an earlier Opinion on a related appeal, Chapter 5 claims are not legally saleable.  Thus, the Committee's claims were properly filed.  *See In re LWD, Inc.*, 2007 WL 1035149 (W.D. Ky. 2007).

At the time the sale was completed, the Bankruptcy Court entered a Supplemental Sale Order reiterating that the Chapter 5 claims were not transferred as a result of the auction.  As the Court held in its previous rulings, this Order was effective.  *Id.*

money and insurance policies would have raised the bid prices at the auction for other bidders, that the transfer of the assets and policies constituted an unfair windfall to K&B, and that K&B's nondisclosure and possession of these assets deprived the estate of its rightful property. The Bankruptcy Court held an adversary proceeding on this issue on October 24, 2004, and ruled for the Committee on February 10, 2005 (the "Reimbursement Order").[3]   The ruling ordered K&B to return $828,875 to the Debtors' estates. The Bankruptcy Court held that the Term Sheet supplanted the terms of the Cash Collateral Order and held that the insurance and cash assets should have been disclosed before the sale pursuant to the Term Sheet. The Bankruptcy Court also denied a Motion to Reconsider its ruling.

K&B then appealed the Bankruptcy Court's ruling. Though the appeal was held to be untimely, this Court ruled on the merits of K&B's claims.[4]   The Court found that the Bankruptcy Court properly held a hearing on the Committee's claims and properly found that assets had been improperly secreted against the rules set forth in the Term Sheet, and that K&B was required to return the assets contested by the Committee to the Debtors' estate.

K&B then moved the Court to reconsider its appellate ruling, claiming that this Court did not have subject matter jurisdiction over the appeal and that the Bankruptcy Court's ruling was not an appealable Order. This Court denied K&B's Motion for Reconsideration of its Appeal of the Bankruptcy Court's Reimbursement Order, holding that the Committee did have standing to represent the rights of all Debtors and that the Bankruptcy Court's February 10, 2005 Order was final and appealable.

---

[3]*In re LWD, Inc.*, 332 B.R. 543 (Bankr. W.D. Ky. 2005).

[4]*In re LWD, Inc*., 2007 WL 2668512 (W.D. Ky. 2007).

4

Having been unable to collect under the Bankruptcy Court's February 10, 2005 Reimbursement Order, the Committee filed a Motion for Entry of an Order for Contempt with the Bankruptcy Court on January 5, 2006.  Following a hearing, the Bankruptcy Court denied the Committee's Motion for Contempt.  The Committee's Motion for Reconsideration was also denied.  The Committee now appeals the Bankruptcy Court's April 16, 2007 Order denying the Committee's Motion for Contempt and subsequent Motion for Reconsideration.

## STANDARD

On appeal to the District Court, a Bankruptcy Court's decision to impose sanctions for contemptuous conduct is reviewed for abuse of discretion.  *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003); *Thomasville Furniture Indus., Inc. v. Elder-Beerman Stores, Corp.*, 250 B.R. 609, 619 (S.D. Ohio 1998) (citing *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 721 (6th Cir. 1996)).  Under the abuse of discretion standard, a Bankruptcy Court's decision is reviewed for clearly erroneous findings of fact or application of an incorrect standard of law.  *See Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006).  "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion."  *In re M.J. Waterman & Associates, Inc.*, 227 F.3d 604, 608 (6th Cir. 2000).

## DISCUSSION

### I. Jurisdiction

In its Response Brief, K&B reargues numerous jurisdictional issues, all of which have previously been presented and ruled upon by the Court.  Specifically, K&B contends that: (1) the

Court lacks jurisdiction over this appeal; (2) the Court lacks subject matter jurisdiction; and (3) the Bankruptcy Court's February 10, 2005 Reimbursement Order is not final and appealable. Because the Court has already addressed these jurisdictional issues in its prior rulings, it declines to do so again here.[5]

## II.  Review of the February 10, 2005 Reimbursement Order & Chapter 5 Causes of Action

K&B also urges the Court to reconsider two of its prior substantive rulings.  First, K&B contends that the Bankruptcy Court's February 10, 2005 Order is not a judgment, and therefore is void.  Second, K&B contends that it is the proper owner of the proceeds of the Chapter 5 causes of action, not the Committee.

In *California State Bd. of Equalization v. Sierra Summit, Inc*., the Supreme Court held that, in reviewing a contempt order, it is not the role of the court to also review the underlying judgment upon which the contempt order stands.  490 U.S. 844, 856 (1989).  As the Court explained: "It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.... [W]hen [an order] has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have been issued in the first place." *Id.* (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)).

Accordingly, the Court declines to reconsider the substantive arguments underlying the contempt order, upon which the Court has already ruled.

---

[5]The Court notes that these issues are currently pending on appeal before the Sixth Circuit.

### III.  Motion for Contempt as a Proper Remedy

K&B contends that the Bankruptcy Court's Order was improper because it was decided by motion, rather than by a new and independent adversary proceeding, as required by Federal Rule of Bankruptcy Procedure 7001.[6]  In response, the Committee contends that a motion for contempt is appropriate under Federal Rules of Bankruptcy Procedure 9014 and 9020.[7]

As stated in the Bankruptcy Court's Order, the Bankruptcy Court made its determination regarding the Committee's Motion for Entry of an Order for Contempt pursuant to an adversary proceeding, albeit not a wholly new one.  Rather, the Bankruptcy Court's Order was a continuing extension of Adv. Proc. No. 04-05042.  Because K&B has failed to allege any prejudicial effect caused by the Bankruptcy Court's adversary proceeding, the Court finds that the Bankruptcy Court sufficiently complied with Federal Rule of Bankruptcy Procedure 7001.

Statutory law supports a finding that the Bankruptcy Court has authority to grant civil contempt petitions pursuant to 28 U.S.C. §157(b)(1).[8]  Section 157(b)(2) sets forth a list of "core

---

[6]Federal Rule of Bankruptcy Procedure 7001 reads, in pertinent part: "An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002; ... (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief; ..."

[7]Federal Rule of Bankruptcy Procedure 9014 reads, in pertinent part: "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise."

Federal Rule of Bankruptcy Procedure 9020 reads: "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."

[8]28 U.S.C. §157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review

proceedings," all of which require the Bankruptcy Court to conduct an adversary proceeding. Here, the Bankruptcy Court identified in its Order that it was conducting a core proceeding. The Bankruptcy Court had authority to do so because a contempt petition pertains to the administration of a bankruptcy estate. 28 U.S.C. §157(b)(2)(A).

Even if the Bankruptcy Court had not conducted an adversary proceeding, the Bankruptcy Court has additional authority pursuant to 11 U.S.C. §105 to grant civil contempt petitions as contested matters, wherein Federal Rules of Bankruptcy Procedure 9014 and 9020 would be applicable. So long as the parties were properly notice and no prejudicial effect occurred, it is permissible for a request for an order to be made by motion. *See In re Hebert*, 61 B.R. 44, 45 (Bankr. W.D. La. 1986). Therefore, assuming *arguendo*, that this case was brought as a motion instead of an adversary proceeding, the Court, in its discretion, can decide the matter.

Accordingly, the Court finds that the Bankruptcy Court properly conducted an adversary proceeding regarding the contempt petition. In addition, this finding renders moot K&B's pending motions for interlocutory appeal before the Court, Civil Actions Nos. 5:06-MC-00008-TBR (Docket #1) and 5:06-MC-00009-TBR (Docket #1).

**IV. Motion for Contempt**

"In a civil contempt proceeding, the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order." *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). This requires a showing that the contemnor violated a "definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts

──────────

under section 158 of this title."

8

with knowledge of the court's order" and that the prior order was "clear and unambiguous." *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (citing *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir.1991)). "Ambiguities must be resolved in favor of the party charged with contempt." *Id.* at 551.

Once the petitioner has made a prima facie case showing a violation, the burden of production shifts to the contemnor to show ability to comply. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 645-646 (1988). The contemnor may also bear the burden of persuasion. *Id.* The Sixth Circuit has explained that:

> [T]he test is not whether defendants made a good faith effort at compliance but whether 'the defendants took all reasonable steps within their power to comply with the court's order.'... [G]ood faith is not a defense to civil contempt. Conversely, impossibility would be a defense to contempt, but the [contemnor] had the burden of proving impossibility, and that burden is difficult to meet. Although diligence is relevant to the question of ability to comply, the [contemnor's] evidence of diligence alone does not satisfy that burden. ... [I]nability to comply would be a defense ... but defendants would be expected ... to show this 'categorically and in detail.'

*Glover*, 138 F.3d at 244 (quoting *Peppers v. Barry*, 873 F.2d 967, 968-969 (6th Cir. 1989)).

On appeal, the Committee does not contest the Bankruptcy Court's finding that the Committee met its burden of proof to hold K&B and the Kattulas in contempt. Rather, the Committee contests the Bankruptcy Court's application of the law, arguing that the Bankruptcy Court clearly erred when it found that K&B met its burden of proof to show inability to comply

9

with the Reimbursement Order.  In its Response Brief, K&B contests the Bankruptcy Court's finding that the Committee met its burden of proof to show a violation of the court's February 10, 2005 Reimbursement Order, arguing that the Committee failed to do so because the Reimbursement Order was ambiguous.  In its Reply Brief, the Committee argues that K&B cannot raise the issue of whether the Reimbursement Order was ambiguous, which in turn raises the larger issue of whether the Committee met its initial burden of proof, because K&B failed to file an appropriate cross-appeal raising the issue.

Rule 8002 of the Federal Rules of Bankruptcy Procedure sets forth the standard for timely filing a notice of appeal.  Under Rule 8002, a party has a 10-day period from the entry of the Bankruptcy Court's judgment, order, or decree in which to file a notice to appeal.  According to Rule 8002's corresponding Advisory Committee Notes, "If a timely notice of appeal is filed, other parties have an additional 10 days within which to file a notice of appeal. A notice of appeal filed within the additional 10 day period by an appellee is a cross appeal..."

Generally, an appellee "may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); *see Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir.1993) (stating that "the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary").  Accordingly, in the absence of a cross-appeal, the Court need not consider any argument urged by the prevailing party who choose not to file a cross-appeal.  However, "the appellee may, without taking a cross-appeal,

10

urge in support of a decree any matter appearing in the record although his argument may

involve an attack upon the reasoning of the lower court, or an insistence upon a matter

overlooked or ignored by it." *American Ry. Express Co.*, 265 U.S. at 435.

Recognizing that the Court need not address K&B's argument that the Bankruptcy

Court's February 10, 2005 Reimbursement Order may be ambiguous, the Court nonetheless

chooses to do so and finds that the Reimbursement Order is not ambiguous.  In regard to the

transfer of $476,500, the Reimbursement Order issued by the Bankruptcy Court clearly indicates

that the Term Sheet firmly establishes the amount of the Committee's secured claim against the

Debtors.  Furthermore, in reaching its conclusion, the Bankruptcy Court relied on its

determination that the testimony of Mr. Kattula and Mr. Sills, both of whose testimony was

meant to demonstrate the uncertainty surrounding the Term Sheet, lacked credibility.  In regard

to the Closure Insurance Policy, the Reimbursement Order clearly indicates that because the

policy was inadequately disclosed, Defendants must pay the Debtors' estate $352,375, the

estimated value of the policy as calculated by the Bankruptcy Court.[9]  The Court notes that the

Reimbursement Order fails to identify any specific funds from which K&B is to make its total

repayment of $828,875 to the Debtors' estate.  However, the Court also takes into consideration

the Bankruptcy Court's judgment that "undocumented loans ... abound" and that Mr. Kattula's

business dealings are by no means "reasonable or even logical."   When assessed in its entirety,

the Court finds it sufficient that the Bankruptcy Court in its Reimbursement Order stated a

---

[9]The Bankruptcy Court determined that the Closure Insurance Policy's maximum "surrender value" would have been $354,375, based on what a hypothetical buyer would have bid for it. The Bankruptcy Court then adjusted that value based on the Federal Judgement Rate, ultimately ascertaining that no buyer would have bid more than $352,375 on the policy.

definite amount to be paid from funds designated by the Term Sheet and the court's calculation of the value of the insurance policy.  Thus, the Court finds that the Reimbursement Order was clear and unambiguous.

The Court further finds that the Bankruptcy Court applied an incorrect legal standard when it determined that K&B met its burden of proof to show inability to comply with the Reimbursement Order.  In its Order denying the Committee's Motion for Entry of an Order of Contempt, the Bankruptcy Court found that "Defendant's failure to comply with the Reimbursement Order stems primarily from Mr. Kattula's incompetent handling of his and his companies' business affairs, which left Defendant incapable of complying."  In particular, the Bankruptcy Court was moved by the numerous undocumented loans alleged by Mr. Kattula in his courtroom testimony and the documented loans from Prime Financial, Inc., which showed a heavy debt load.

Having reviewed the record, the Court finds that K&B and the Kattulas have to this date made no effort to comply with the Reimbursement Order.  For example, the Partial Assignment of Promissory Note entered into by Waste Path Sanitary Landfill, LLC and Calvert Properties and Robert Kattula, individually, converting a loan asset to cash proceeds and dated November 16, 2005, demonstrates that the Kattulas continued moving assets after the entry of the Reimbursement Order without having paid the amounts due to the Committee.  In this regard, the Court, having combed through the paper trail of promissory notes and bills of sale, reiterates the Bankruptcy Court's finding that "the record is replete with instances of Mr. Kattula having transferred money into and out of various entities that seem to be nothing more than the shells effected for the exercise of Mr. Kattula's personal will."  Nonetheless, it remains true that K&B

12

is also greatly indebted to Prime Financial, Inc. for various secured claims, a total amount of which remains unclear.

The Bankruptcy Court based its determination that K&B and the Kattulas were unable to comply with the Order due to their own poor business dealings, lack of corporate documentation, and general incompetence.  K&B's burden of proof, however, was not to show that their own actions have made it too difficult to comply with the Reimbursement Order.  Instead, the proper burden of proof was for K&B to show that they had taken "all reasonable steps" within their power to comply with the Bankruptcy Court's Order.  By taking no action in regard to the Order, K&B and the Kattulas have clearly not met their burden.  Furthermore, it would be imprudent to reward K&B and the Kattula by denying the contempt order when their inaction is the sole reason for their inability to comply with the Order.

The Court finds that because the Bankruptcy Court applied the incorrect legal standard in making its determination, it abused its discretion.  Therefore, the Committee's Motion for Entry of an Order for Contempt should be granted and the Committee's Motion for Reconsideration for Entry of an Order for Contempt is thereby rendered moot.  The April 16, 2007 Order denying the Committee's Motion for Entry of an Order for Contempt is vacated and remanded to the Bankruptcy Court to enter an order consistent with this opinion and conduct further hearings as to the proper sanctions to be imposed upon K&B and the Kattulas.

## CONCLUSION

For the above reasons, the Court **REVERSES** the Bankruptcy Court's Order.  An appropriate Order shall follow.